# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

_____

NEELCHINE ENGINEERING, INC., a
New Mexico Corporation,

        Plaintiff,

v.                                                                                                                                                        No. CIV 02-1112 BB/LCS

SAFETY VALVE SYSTEMS, LLC, a
Nevada Limited Liability Company;
JAMES N. LANE, a New Mexico
resident; VERNON J. PAYNE, a New
Mexico resident; and SCOTT F.
SMELSER,  New Mexico resident,

        Defendants.

## MEMORANDUM OPINION AND ORDER

       This matter is before the Court for consideration of cross-motions for summary judgment filed by Plaintiff and Defendants (Docs. 21, 25).  The summary-judgment motions address only Plaintiff's patent-infringement claims and have no bearing on the other claims raised in Plaintiff's complaint.  After considering the submissions of the parties and the applicable law, the Court determines that both motions for summary judgment should be denied, for the reasons discussed below.

       **Applicable Law:**  In analyzing a patent-infringement claim, the Court must first determine the scope and meaning of the patent claim, and then compare the properly-construed claim to the device accused of infringing.  *Anchor Wall Systems v. Rockwood Retaining Walls*, 340 F.3d 1298, 1306 (Fed. Cir. 2003).  The first determination is a question of law, while the second is generally a question of fact.  *Id.*  In construing a claim, the Court must give to the words used in the claim the same ordinary meaning as would be attributed to those words by a person skilled in the art, or

the field in which the patent was obtained.  *Intellectual Property Development, Inc. v. UA-Columbia Cablevision of Westchester, Inc.*, 336 F.3d 1308, 1314 (Fed. Cir. 2003); *Texas Digital Systems, Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1202 (Fed. Cir. 2002).  However, a patentee is entitled to be his own lexicographer, and may assign any meaning to the words used that he chooses.  *Dow Chemical Co. v. Sumitomo Chemical Co., Ltd.*, 257 F.3d 1364, 1373 (Fed. Cir. 2001); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).  In deciding the meaning of the words used in a claim, the Court may refer to dictionaries, encyclopedias, or treatises.  *Texas Digital Systems*.  However, technical dictionaries or treatises are highly preferred over non-scientific dictionaries for purposes of claim construction.  *Bell Atlantic Network Servs., Inc. v. Covad Communications Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001).

**Disputed Terms Used in Plaintiff's Claim:**  The parties disagree as to the meaning of several words used in Plaintiff's claim, as to the nature of Defendants' accused device, and as to the issue of whether a phrase found in the preamble to Plaintiff's claim is a limitation on that claim or simply a statement of purpose or intended use.  For example, the parties disagree as to the meanings of the words "uncoupled," "free-wheel," "first locking mechanism," and "gear."  Furthermore, the parties disagree as to whether Defendants' accused device is a "lockout device."  The parties rely on dictionary definitions of some of the above terms, but cannot agree on how the definitions apply to the accused device.  Neither party has cited the Court to any definitions provided by a technical dictionary.  Furthermore, no evidence has been submitted as to the understanding a person of ordinary skill in the art would have, concerning the meanings of the disputed terms.[1]  At this point, the Court is not comfortable enough with the state of the record to

---

[1]Rocky Neeley's declaration in support of Plaintiff's motion for summary judgment asserts that Defendants' accused device contains features that satisfy these terms, but the declaration does not attempt to provide an understanding of how a person of ordinary skill in the art would

grant summary judgment to either party. Furthermore, since Plaintiff's other claims remain extant at this point and will presumably have to be tried, there is little harm in retaining the infringement claims as well, to be tried with the other claims. This is especially true since evidence relevant to the other claims, such as the individual Defendants' prior relationship with Plaintiff, will be highly relevant to the infringement claims. For these reasons, both parties' motions for summary judgment will be denied.

**Court's Preliminary Views as to Issues Raised by the Parties:** After reviewing the material submitted by the parties, the Court does have some preliminary views concerning the issues that are significant in this case. In the interest of promoting settlement and of allowing the parties an opportunity to correct any misapprehensions the Court may have about the facts or law in this case,[2] the Court will briefly discuss the issues raised by the parties.

(1) Whether the phrase "to prevent unauthorized access," found in the preamble to Plaintiff's claim, is a limitation on that claim or merely a statement of purpose: As the parties have both conceded, Plaintiff's claim is a combination claim written in the Jepson format. In a Jepson claim, unlike other claims, the preamble of the claim is part of the invention and portions of the preamble can constitute claim limitations. *Epcon Gas Systems, Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1029 (Fed. Cir. 2002); *Rowe v. Dror*, 112 F.3d 473, 478-79 (Fed. Cir. 1997). However, mere statements of purpose or use are not limitations, even in a Jepson claim. *Rowe*. The Court's preliminary view is that the phrase "to prevent unauthorized access" is such a mere statement of purpose. The phrase does not describe any structure of the invention, and does

interpret the terms.

---

[2] As the parties are aware, the field of patent law is esoteric, with a unique vocabulary that is not always easily understood by outsiders, and the Court makes no claim to expertise in the field.

not provide a physical context for where the invention will be used.  *Compare Rowe* ("angioplasty" was a limitation on the claim because the patent evinced a particular and distinct structural meaning for "balloon angioplasty catheter" that distinguished it from "balloon catheters" generally).  Instead, it simply states what the invention will be used for:  to prevent unauthorized access to valves and regulators that control energy flow.  While the valves and regulators (or "energy controlling apparatus" as the claim literally states) portion of the sentence would definitely appear to be a claim limitation, the "prevent unauthorized access" phrase is not.  For that reason, Defendants' argument that their device does not prevent unauthorized access, because it does not have a lock, does not appear to have merit.

    (2) Whether the accused device can be considered a "lockout device," even though Defendants do not provide a lock of any type with the device:  Defendants' own materials describe the device as being designed for meeting OSHA lockout requirements, and explain how a valve can be locked out simply by adding a padlock or hasp to the device.  [Exh. B, Neeley Decl. in Support of Pltf.'s Sum. Jmt. Motion]  Plaintiff's slide cap provides an opening for installation of a padlock or hasp.  Defendants' device, therefore, can easily be converted to a "lockout device," and Defendants provide information to their customers as to how this can be done.  It should be noted that Plaintiff's infringement claims are not based on literal infringement, but on active or contributory infringement.  Both of these types of infringement may be based on the infringer's acts of supplying component parts of the Plaintiff's invention, but not the entire invention, to buyers or other entities, who then directly infringe on the patent by supplying the missing element of the invention.  *See, e.g., E.I. Dupont De Nemours and Co. v. Monsanto Co.*, 903 F.Supp. 680, 736-37 (D. Del. 1995) (defendant actively infringed plaintiff's patent by supplying polymer to buyer, where defendant knew buyer would use polymer to manufacture

dyed nylon fibers that infringed on plaintiff's patent); 35 U.S.C. §§ 271 (b) and (c).  In other words, even assuming a padlock or other type of lock must be included to make Defendants' accused device a "lockout device," the fact that Defendants supplied every part of the device *except* a lock does not absolve them of liability for the infringement claims.

    (3) Whether the word "uncoupled" in Plaintiff's claim means "not touching," as Defendants argue, or "not engaged and transmitting force," as Plaintiff maintains:  When Defendants' device is in the locked position, with the push-button depressed, the handle ratchets in one direction, with the parts continuously touching but not engaged.  The Court notes that in Plaintiff's patent, the second preferred embodiment gives an example of a device which, like Defendants' device, has a ratchet feature.  The "pawl arm" in this embodiment appears to be continuously in contact with the gear teeth, as it ratchets over each tooth when turned in one direction, or engages the gear teeth when turned in the other.  If that is an accurate description of the second preferred embodiment, this embodiment is persuasive evidence that Plaintiff did not mean "not touching" or "not in contact with" when the patent uses the word "uncoupled." Otherwise, using Defendants' definition of "uncoupled" would exclude the second preferred embodiment from the claim, because that embodiment would not meet all of the limitations of the claim.  Construing a claim to exclude a preferred embodiment is rarely, if ever, correct, and would require highly persuasive evidentiary support.  *Anchor Wall Systems, supra*, 340 F.3d at 1308; *Invitrogen Corp. v. Biocrest Mfg.*, 327 F.3d 1364, 1369 (Fed. Cir. 2003); *Vitronics Corp., supra,* 90 F.3d at 1583.  At this point, therefore, the Court believes the word "uncoupled" should be construed as meaning "not engaged and transmitting force" rather than "not touching or in contact with."

(4) Whether the term "free-wheel" can mean turn freely in one direction or both directions, as argued by Plaintiff, or must mean to turn freely in both directions, as argued by Defendants. The accused device, as discussed above, ratchets in only one direction when the push-button is depressed, and therefore turns freely only in that direction. For that reason, Defendants argue the device does not meet the claim limitation of "free-wheeling." Again, however, if Defendants' definition of free-wheeling is accepted, the second preferred embodiment of Plaintiff's patent would be excluded from the claim. This second preferred embodiment describes a device which, exactly like Defendants' device, ratchets or turns freely in only one direction when the key locking mechanism is in the lockout position. Given the law recited above, that a claim construction which excludes a preferred embodiment can hardly ever be correct, the Court interprets the term "free-wheel" to include situations in which the device turns freely in both directions or turns freely in only one direction.

(5) Whether Defendants' device includes a "first locking mechanism," one of the limitations of Plaintiff's claim: Plaintiff's preferred embodiments describe a first locking mechanism that is a key locking mechanism, which puts the device into the lockout position.[3] This is accomplished by turning a key to lock the device into the lockout position, and then removing the key. [Exh. D, Neeley Decl.] Defendants point out that in their accused device, the mechanism that puts their device into the lockout position is a push-button mechanism, and does not "lock" in the sense that no key or combination is necessary to remove the device from the lockout position. Therefore, argue Defendants, their device does not contain a "first locking mechanism." Plaintiff, on the other hand, maintains that a "locking mechanism" is simply a

---

[3]The "lockout position" is the position in which the handle turns freely, in one or both directions, thus either not allowing the valve or regulator shaft to be turned at all or allowing it to be turned in only one direction.

mechanism that locks a device into place, and does not necessarily have to include the ability to secure the mechanism in the locked position until a key or combination is used to unlock it. Plaintiff contends the push-button feature of Defendants' device is a locking mechanism, because when the push-button is depressed the device is set, or locked, into the lockout position. At this point, the Court needs more information to make a judgment on this issue, and especially requires input from a person of ordinary skill in the field, as to how the term "locking mechanism" would be understood. It may be significant if, as argued by Plaintiff, one of the Defendants was a co-inventor on a keyless locking device. It is not sufficient, however, as a basis for summary judgment on this issue. The fact that Defendants may have been aware of the existence of locking mechanisms that do not require a key or combination is not conclusive on the issue of whether Plaintiff's patent intended to limit the term, as used in the patent, to such devices.

(6) Whether Defendants' device contains a "gear": Defendants deny there is a gear in their device; Plaintiffs contend that two pieces of the device are a gear, or at least are equivalent to a gear. Again, the Court has no expertise in this area, and cannot claim to be a person of ordinary skill in the art. As a matter of common sense, Plaintiff's position is logical; Defendants' accused device has teeth that fit into depressions and exert turning force against the piece containing the depressions. This sounds like the way a gear operates, and appears to fit the dictionary definition of a gear. However, the Court is not ready to conclusively decide the issue at this time.

(7) Whether Defendants' device infringes under the doctrine of equivalents: Plaintiff argues that even if Defendants' accused device does not copy Plaintiff's claim exactly, it does satisfy the doctrine of equivalents. Under this doctrine, the accused device must contain each limitation of the claim or its equivalent. *Eagle Comtronics, Inc. v. Arrow Communication Labs.,*

*Inc.*, 305 F.3d 1303, 1315 (Fed. Cir. 2002).  An element in the accused device is equivalent to a claim limitation if the differences between the two are insubstantial to a person of ordinary skill in the art.  *Id.*  One question that may be asked is whether each element of the invention is matched by a component or components of the accused device that performs substantially the same function, in substantially the same way, to achieve substantially the same result.  *Ethicon Endo-Surgery, Inc. v. United States Surgical Corp.*, 149 F.3d 1309, 1315 (Fed. Cir. 1998).  In this case, for example, even if Defendants' accused device does not contain a gear, it is possible that the teeth and depressions described above perform substantially the same function as a gear, in substantially the same way, to achieve substantially the same result--turning the "receiving" part of the device against which the teeth are exerting force.  Defendants' device also uses a slide cap that appears virtually identical to the slide cap pictured in Plaintiff's patent.  In addition, it is possible that the push-button mechanism that locks the accused device into the lockout position performs the same function as the key-locking mechanism described in the patent, unless it can be shown the ability to lock the device into place with a key or combination is a significant difference.  The Court is not prepared at this time, however, to hold that a person skilled in the art would find the differences between the accused device and Plaintiff's claim to be insubstantial, and awaits more evidence on that issue.

    (8)  Whether Defendants' accused device is a "staple article of commerce" that has a "substantial non-infringing use":  Defendants have raised this defense to the claim of contributory infringement, arguing that their accused device can function as a "tagout" device, rather than a lockout device, if the buyers of the device attach a tag to the slide cap rather than attaching a padlock or other lock to the cap.  Defendants have submitted no evidence to show that their device actually is used by a substantial number of buyers for tagging out, rather than locking out,

valves or regulators.  Furthermore, the Court, not being versed in patent law, finds it difficult to understand why this statutory defense would apply to this type of situation, where a defendant allegedly copies almost all of a plaintiff's invention, and then tries to avoid liability by arguing that the invention has another use as well as the one contemplated by the plaintiff's patent.  This defense appears designed for cases in which a defendant supplies a genuinely staple article of commerce, such as a raw material that can be used to make many different products or a component that can be used in other devices as well, to a person who then happens to use it to infringe on a patent.  The Court awaits the parties' further argument on this issue.  In any event, as Plaintiff has pointed out, this statutory defense applies only to claims of contributory infringement, and not to claims of active infringement.  *See* 35 U.S.C. § 271(b) (containing no such defense) and § 271(c) (explicitly setting out the defense).

## ORDER

Based on the foregoing, it is ORDERED that both parties' motions for summary judgment (Docs. 21, 25) be, and hereby are, DENIED.  The parties are directed to confer with the assigned Magistrate Judge as soon as possible to re-establish case deadlines and get this case back on schedule.

DATED November 20, 2003.

_____
BRUCE D. BLACK
UNITED STATES DISTRICT JUDGE

**ATTORNEYS**:

**For Plaintiff**:
Stephen A. Slusher

**For Defendants**:
Albert L. Schmeiser
Thomas L. Johnson
John W. Boyd